**AMERICAN TRUCKING ASSOCIATIONS, INC., Plaintiff,**

v.

**DEPARTMENT OF TRANSPORTATION et al., Defendants.**

Civ. A. No. 79–2857.

United States District Court, District of Columbia.

April 8, 1980.

Charles Wheatley, Jr., Philip B. Malter, Wheatley & Wollesen, Washington, D. C., for plaintiff.

Judith S. Scolnick, Civil Division, Federal Programs Branch, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Plaintiff seeks to enjoin the Department of Transportation from printing and disseminating material which they allege to be in violation of two statutory provisions. For the reasons discussed below, we grant defendants' motion to dismiss because the plaintiff lacks standing and because the

plaintiff has failed to state a claim upon which relief can be granted.

FACTS

Plaintiff American Trucking Association, a national organization representing all types of motor carriers of freight, has sued the United States Department of Transportation and its Secretary, Neil Goldschmidt, seeking preliminary and permanent injunctive relief. By its amended complaint, plaintiff seeks to enjoin the Department from printing and distributing certain materials advancing the Administration's position on legislation now pending before the Congress, the Trucking Competition and Safety Act of 1979 (S. 1400 and H.R. 4856), which was introduced by the Administration to deregulate the trucking industry. Plaintiff, which opposes trucking deregulation, alleges that these materials have been printed and distributed in violation of 18 U.S.C. § 1913 (the Anti-Lobbying Act) and § 607(a) of P.L. 95–429 (92 Stat. 1016). Section 1913 provides that funds appropriated by Congress may not be used to pay for services or material designed to influence a member of Congress to favor or oppose legislation. Section 607(a) provides that no appropriations may be used for publicity or propaganda purposes designed to support or defeat legislation pending before the Congress.

The complaint and the affidavits of Ernest Warner, Jr., the Department of Transportation's Deputy Assistant Secretary for Intergovernmental Affairs, reveal the following material[1] prepared and distributed by the Department is alleged to be in violation of the two statutes:

(a) An April, 1979 Department Fact Sheet summarizing the Administration's views on trucking regulatory reform, which was mailed only upon request to 10 to 12 individuals, largely members of the press.

(b) A June 29, 1979 letter from the Department's Assistant Secretary for Governmental and Public Affairs expressing the Administration's support for the pending

---

1. Plaintiff's Memorandum of January 25, 1980 points to a fifth document allegedly violative of

§ 1913 and § 607(a), a pamphlet entitled "What's Wrong With Truck Regulation."

legislation, and enclosing a copy of the legislation, a section-by-section analysis of the bill, and the President's message to Congress supporting the legislation, which was sent to approximately 743 individuals, most of whom were governors, state DOT officials, private interest groups concerned with trucking regulation, shippers and mayors.

(c) A July 18, 1979 mailing containing a copy of testimony supporting the legislation by the Chairman of the President's Council of Economic Advisors, Charles Schultz, which was mailed to the same group receiving the June 29th mailing.

(d) A Fall, 1979 issue of the Department's quarterly magazine, *Transportation U.S.A.*, containing an article stating the Administration's position on the pending legislation, 9,800 copies of which were distributed free to interested groups and individuals, and 2,380 copies of which were distributed to paid subscribers.

Plaintiff brings this action because it contends that it will be harmed by deregulation of the trucking industry, and impliedly, that the action complained of will in some way bring about or help to bring about passage of the legislation deregulating the industry.

This action is before us on defendants' motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., because the plaintiff lacks standing and because the plaintiff has no cause of action. Alternatively, defendants move for summary judgment, pursuant to Rule 56(b), Fed.R.Civ.P.[2] For the reasons discussed below, we dismiss this action because we find that plaintiff has failed to state a claim upon which relief can be granted and is without standing to seek the injunctive relief requested.

ANALYSIS

### 1. *Private Right of Action*

■ Plaintiff bases federal question jurisdiction on two statutes, 18 U.S.C. § 1913 and § 607(a) of P.L. 95–429 (92 Stat. 1016). These statutes provide in relevant part:

Title 18 U.S.C. § 1913 provides:

No part of the money appropriated by any enactment of Congress shall, in the absence of express authorization by Congress, be used directly or indirectly to pay for any personal service, advertisement, telegram, telephone, letter, printed or written matter, or other device, intended or designed to influence in any manner a Member of Congress, to favor or oppose, by vote or otherwise, any legislation or appropriation by Congress, whether before or after the introduction of any bill or resolution proposing such legislation or appropriation; but this shall not prevent officers or employees of the United States or of its departments or agencies from communicating to Members of Congress on the request of any Member or to Congress, through the proper official channels, requests for legislation or appropriations which they deem necessary for the efficient conduct of the public business.

Section 607(a) of P.L. 95–429 (92 Stat. 1016) provides:

No part of any appropriation contained in this or any other Act, or of the funds available for expenditure by any corporation or agency shall be used for publicity or propaganda purposes designed to support or defeat legislation pending before Congress.

Plaintiff disclaims that its cause of action is predicated on any private right of action expressed or implied in either of these statutes. Plaintiff's Response in Opposition to Defendants' Motion to Dismiss or for Summary Judgment, at 18. In view of the Supreme Court's action in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975) and its recent decision, *Trans-American Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), we accept this disavowal as well-taken and do not address this issue. However, we do note in passing that neither statute expressly provides for a private right of action, and that courts in this juris-

---

**2.** Plaintiff has moved, pursuant to Rule 12(f), Fed.R.Civ.P., to strike defendants' reply to plaintiff's opposition to defendants' motion to dismiss or for summary judgment. We deny plaintiff's motion to strike.

diction which have searched for an implied private right of action in these statutes in light of recent Supreme Court guidelines have concluded that no such right exists. *See National Treasury Employees Union v. Campbell*, 482 F.Supp. 1122 (D.D.C.1980); *American Conservative Union v. Carter*, No. 79–2495 (D.D.C. Dec. 14, 1979).

Rather, plaintiff's argument is that our jurisdiction is based upon the inherent equitable power of this court to enjoin *ultra vires* activity by government officials. Plaintiff cites a number of cases for this proposition, but a review of plaintiff's own cases reveals the infirmity of their position. These cases involved a direct, tangible, palpable injury to the party seeking to invoke the court's jurisdiction. This Circuit's Court of Appeals has described those who may invoke the court's power in this regard as ". . . a person affected concretely, substantially and irreparably by administrative action . . . ." *Fleming v. Moberly Milk Products Co.*, 160 F.2d 259, 264 (D.C. Cir.1947). As the following discussion indicates, we cannot find that plaintiff is a person so injured.[3] We therefore conclude that plaintiff cannot invoke the court's inherent equitable power for the relief they seek, and that plaintiff has no cause of action.

### 2. Standing

■ "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. The inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The constitutional limitation on standing is anchored in the Article III provision restricting the judicial power to the hearing of cases or controversies. At an absolute minimum, this Article III restriction requires that the plaintiff suffer some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and, assuming there is actual or threatened injury, that there be a substantial likelihood that the injury will be redressed if the requested relief is granted. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978).

In the instant case, plaintiff's complaint alleges two injuries. The first is that "[T]he bills which defendants' illegal actions support will . . . reduce plaintiff's revenues and profits. . . . The expected reduction in revenue and profit levels must inevitably force the marginal firms out of business and adversely affect the plaintiff's provision of service to the public." Complaint, ¶ 6. Plaintiff's complaint also asserts that "[P]laintiff is entitled by law to have Congress weigh the impact of this legislation absent the illegal use of plaintiff's own tax money being expended in blatant support of such legislation." Complaint, ¶ 7.

■ The first injury alleged by plaintiff is thus dependent upon passage by Congress of the Trucking Competition and Safety Act of 1979. We find it unnecessary to decide whether passage of this Act would indeed injure plaintiff because the causal connection between defendants' conduct and the injury alleged is remote, if not nonexistent. The second element necessary to meet the constitutional requirements of standing is not present; the injury complained of is not likely to be redressed if the requested relief is granted. To believe otherwise would be to find that if we enjoined the Department of Transportation from printing and disseminating the Administration's views[4] on trucking deregulation in

---

3. We read this injury requirement as being synonymous with the injury in fact requirement necessary to establish a "case or controversy" under Article III of the Constitution.

4. In view of the rationale of our decision, it is not necessary to reach the question whether this public information program is completely consistent with defendants' statutory obligation to "consult and cooperate with State and local

**570**

the limited manner complained of here, it would be substantially likely that the legislation would not pass Congress, or that it would pass Congress in a form which would not injure plaintiff. The causal link plaintiff urges upon us is simply too attenuated. If the legislation passes Congress, it could not fairly be traced to the challenged actions of the defendant. *See Simon v. Eastern Kentucky Welfare Rights Organization, supra.* Defendants have noted well the absence of a fairly traceable causal connection between the claimed injury and the challenged conduct.

> The complaint apparently is that *if* the mailing to the 500[5] interested persons caused some of the recipients of these letters to support the legislation, who *may* not have otherwise supported the legislation, and *if* some of these persons were directly motivated to contact their Congressman to express their support for the legislation, and these persons *might* not have done so otherwise, and *if* these communications occurred in sufficient numbers to create an appearance of support for the legislation which would not have otherwise existed, and *if* the Congressmen were persuaded to enact the legislation of (sic) the basis of this perceived groundswell of support, *then* the plaintiff *may* be harmed.

Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss or in the Alternative for Summary Judgment, at 7. If an injury could be deemed to exist from this causal connection, it is at best abstract, hypothetical and conjectural. Lacking the elements of "concreteness," it clearly does not meet the standing requirements imposed by Article III.

The second injury plaintiff claims is the invasion of its "right" to have Congress consider the pending legislation absent any violation of the two statutes in question which might impact on this decisional process. The prudential limitations the courts have imposed on the exercise of its jurisdiction are additional reasons which preclude this alleged injury from providing plaintiff with standing.[6] "Apart from this minimum constitutional mandate, this Court has recognized other limits on the class of persons who may invoke the courts' decisional and remedial powers. First, the Court has held that when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth v. Seldon, supra* at 499. *See Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974); *United States v. Richardson,* 418 U.S. 116, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Ex parte Levitt,* 302 U.S. 633, 58 S.Ct. 1, 82 L.Ed. 493 (1937).

We find that this injury alleged by plaintiff is a generalized grievance which is shared equally, at the most by all citizens who have an interest in the enforcement of criminal and civil statutes, and at the least by all citizens who could be adversely affected by passage of this legislation. In either event, we find the harm alleged so generalized that it does not support standing.

We therefore conclude that plaintiff has not suffered and is not threatened with the "distinct and palpable injury" required to give them standing before this court.

An order consistent with the foregoing has been entered this day.

---

governments, carriers, labor, and other interested parties . . . ." 49 U.S.C. § 1653(a).

5.  Defendants later submitted an affidavit that the mailing referred to actually went to 743 individuals, not 500.

6.  We note that Congress may grant a statutory cause of action to plaintiffs who would otherwise be barred by the prudential limitations on standing. However, plaintiff in this action has expressly disavowed that they have a private cause of action, expressed or implied, by the two statutes allegedly violated. For this reason, we consider the prudential limitations on standing.