United States Senators Charles GRASSLEY, James McClure, Sam Hayakawa, Steve Symms, Jeremiah Denton, Congressman Albert Lee Smith, Iowa State Senator Stephen W. Bisenius, Plaintiffs,

v.

LEGAL SERVICES CORPORATION, Hillary Rodham, Chairman of the Board of Legal Services Corporation, Stephen Engelberg, Revius Ortique, Cecilia Esquer, Howard Sacks, Michael Kantor, Ramona Shump, Robert Kutak, Richard Trudell, F. William McCalpin, Josephine Worthy, in their official capacity as directors of the Legal Services Corporation; Dan J. Bradley, in his official capacity as President of the Legal Services Corporation; Alan W. Houseman, in his official capacity as Research Director for the Legal Services Corporation; Legal Services Corporation of Iowa, Defendants.

Civ. No. 81–277–B.

United States District Court,
S. D. Iowa, C. D.

Feb. 3, 1982.

**820**

Roger J. Marzulla, Maxwell A. Miller, Mountain States Legal Foundation, Denver, Colo., Donald G. Juhl, Nevada, Iowa, for plaintiffs.

Addison M. Parker, Richard A. Malm, Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, Iowa, for defendant Legal Services Corp. of Iowa.

Steven Cole, Washington, D. C., Randy Duncan, Duncan, Jones, Riley & Finley, Des Moines, Iowa, for defendant Legal Services Corp. and individual defendants.

## MEMORANDUM OPINION, RULING ON MOTIONS TO DISMISS, AND ORDER OF DISMISSAL

VIETOR, District Judge.

Plaintiffs, five United States Senators, a United States Representative, and an Iowa State Senator, seek declaratory and injunctive relief against lobbying and political activities allegedly conducted by defendants, the Legal Services Corporation (hereinafter the Corporation), its president and research director, and Legal Services Corporation of Iowa (hereinafter Iowa Legal Services), which plaintiffs assert violate provisions of the Legal Services Corporations Act of 1974, 42 U.S.C. § 2996, et seq., 18 U.S.C. § 1913, and the Moorhead Amendment, Pub. L. 95–431, 92 Stat. 1021,

1045 (1978). Jurisdiction is predicated upon these statutes and 28 U.S.C. § 1331(a). Plaintiffs sue in their legislative capacities. They assert that the alleged lobbying and political pressure asserted by or with the assistance of the defendants has subjected plaintiffs and their staffs to "illegal pressure, by attempting to distort their perception of public opinion on political issues, and by otherwise hindering their fulfilment of their public office." Amended Complaint, ¶ 33–34, at 11–12.

The court has before it defendants' motions to dismiss asserting that the complaint fails to state a claim upon which relief can be granted and that this court lacks subject matter jurisdiction because the statutes upon which plaintiffs rely do not authorize a private right of action. Alternatively, defendants assert that plaintiffs lack standing to bring this suit. Defendant Iowa Legal Services further alleges that plaintiffs have failed to exhaust administrative remedies with the Corporation and that the Corporation has primary jurisdiction over plaintiffs' claims against it. Plaintiffs have filed a resistance.

None of the statutes upon which plaintiffs rely expressly grant or deny the private cause of action asserted in this case. Accordingly, plaintiffs have stated a cause of action upon which relief can be granted only if a private right of action can be implied from the statutes or, as plaintiffs also contend, their action properly invokes this court's "inherent equity jurisdiction."

### IMPLIED CAUSE OF ACTION

In *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), the Court set forth four factors to be considered in determining whether a private cause of action is implicit in a statute not expressly providing one:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," [citation omitted]—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or

to deny one? [Citation omitted.] Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? [Citations omitted.] And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? [Citations omitted.]

Subsequent decisions of the Court have focused the inquiry upon legislative intent. *See Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435 (1981); *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO*, 451 U.S. 77, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981). The ultimate issue, then, is whether Congress intended to authorize the implied cause of action asserted in this case. *Id.* The factors set forth in *Cort v. Ash, supra*, however, remain the criteria by which legislative intent is to be ascertained. *See California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981).

### Legal Services Corporation Act of 1974

The Corporation was established by Congress in 1974 to continue the legal services program then administered through the United States Office of Economic Opportunity (OEO). It was created as a private nonmembership nonprofit corporation in the District of Columbia to provide "financial support for legal assistance in noncriminal proceedings or matters to persons financially unable to afford legal assistance." 42 U.S.C. § 2996b(a). The Corporation itself does not provide legal assistance; it provides financial assistance, through annual congressional appropriations received by the Corporation, to qualified programs furnishing legal assistance to individuals who qualify under financial eligibility criteria prescribed by the Corporation. 42 U.S.C. §§ 2996e(a)(1), 2996f(a)(2). Iowa Legal Services is a nonprofit corporation formed and existing under the laws of Iowa, and it is a recipient of funds from the Corporation.

The provisions of the Legal Services Corporation Act upon which plaintiffs' action is predicated generally prohibit the Corporation, a recipient, or any employee of either program from lobbying or engaging in political activity as it is defined in the Act. *See* 42 U.S.C. §§ 2996e(b)(5), 2996e(c)(2), 2996f(a)(5), 2996f(a)(6), 2996f(b)(4), 2996f(b)(6) & 2996f(b)(7).[1]

---

1. 42 U.S.C. § 2996e(b)(5) provides in part:

The Corporation shall insure that (A) no employee of the Corporation or of any recipient (except as permitted by law in connection with such employee's own employment situation), while carrying out legal assistance activities under this subchapter, engage in, or encourage others to engage in, any public demonstration or picketing, boycott, or strike; and (B) no such employee shall, at any time, engage in, or encourage others to engage in, any of the following activities: (i) any rioting or civil disturbance, (ii) any activity which is in violation of an outstanding injunction of any court of competent jurisdiction (iii) any other illegal activity, or (iv) any intentional identification of the Corporation or any recipient with any political activity prohibited by section 2996f(a)(6) of this title. * * *

\* \* \* \* \* \*

42 U.S.C. § 2996e(c) provides in part:

The Corporation shall not itself—

\* \* \* \* \* \*

(2) undertake to influence the passage or defeat of any legislation by the Congress of the United States or by any State or local legislative bodies, except that personnel of the Corporation may testify or make other appropriate communication (A) when formally requested to do so by a legislative body, a committee, or a member thereof, or (B) in connection with legislation or appropriations directly affecting the activities of the Corporation.

42 U.S.C. § 2996f(a) provides in part:

(a) With respect to grants or contracts in connection with the provision of legal assistance to eligible clients under this subchapter, the Corporation shall—

\* \* \* \* \* \*

(5) insure that no funds made available to recipients by the Corporation shall be used at any time, directly or indirectly, to influence the issuance, amendment, or revocation of any executive order or similar promulgation by any Federal, State, or local agency, or to undertake to influence the passage or defeat of any legislation by the Congress of the United States, or by any State or local legislative bodies, or State proposals by initiative petition, except where—

## 1. Especial Benefit

The initial inquiry under *Cort v. Ash, supra,* is not whether the plaintiffs have been injured by conduct seemingly proscribed by the Act. Instead, the inquiry is whether the plaintiffs are members of the class for whose especial benefit the statute was enacted. *Cort v. Ash, supra,* 422 U.S. at 78, 95 S.Ct. at 2087. "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. University of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). As the Court held in *California v. Sierra Club, supra,* 101 S.Ct. at 1779, "[t]he question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries."

The Supreme Court has not found an intent to provide a private cause of action where the statute states no more than a general proscription of certain activities. *See id.; Universities Research Ass'n, Inc. v. Coutu,* 450 U.S. 754, 101 S.Ct. 1451, 1462, 67 L.Ed.2d 662 (1981); *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 148, 100 S.Ct. 960, 967, 63 L.Ed.2d 267 (1980); *Touche Ross & Co. v. Redington, supra,* 442 U.S. at 569, 99 S.Ct. at 2485; *Cort v. Ash, supra,* 422 U.S. at 80–82, 95 S.Ct. at 2089.

The statutory language of sections 2996e and 2996f does not focus on any particular class of beneficiaries. Rather, the provisions upon which plaintiffs rely simply ban certain conduct by recipients of federal funds or prohibit disbursement of public funds to programs engaged in such conduct. As the Court held in *Cannon v. University of Chicago, supra,* 441 U.S. at 690–93, 99 S.Ct. at 1954–55, there is far less reason to infer a private remedy in such a statute. *See Universities Research Ass'n, Inc. v. Coutu, supra,* 101 S.Ct. at 1462. The provisions of the Legal Services Corporation Act upon which plaintiffs rely contain no more than a general ban from which a private cause of action in favor of a particular group cannot be implied.

Only one court that has addressed the issue in the context of the Legal Services Corporation Act has concluded that any of its provisions were enacted for the especial

---

(A) representation by an employee of a recipient for any eligible client is necessary to the provision of legal advice and representation with respect to such client's legal rights and responsibilities (which shall not be construed to permit an attorney or a recipient employee to solicit a client, in violation of professional responsibilities, for the purpose of making such representation possible); or

(B) a governmental agency, legislative body, a committee, or a member thereof—

(i) requests personnel of the recipient to testify, draft, or review measures or to make representations to such agency, body, committee, or member, or

(ii) is considering a measure directly affecting the activities under this title of the recipient or the Corporation.

(6) insure that all attorneys engaged in legal assistance activities supported in whole or in part by the Corporation refrain, while so engaged, from—

(A) any political activity * * *.

\* \* \* \* \* \*

42 U.S.C. § 2996f(b) provides in part:

(b) No funds made available by the Corporation under this subchapter, either by grant or contract, may be used—

\* \* \* \* \* \*

(4) for any of the political activities prohibited in paragraph (6) of subsection (a) of this section;

\* \* \* \* \* \*

(6) to support or conduct training programs for the purpose of advocating particular public policies or encouraging political activities, labor or antilabor activities, boycotts, picketing, strikes, and demonstrations, as distinguished from the dissemination of information about such policies or activities, except that this provision shall not be construed to prohibit the training of attorneys or paralegal personnel necessary to prepare them to provide adequate legal assistance to eligible clients;

(7) to initiate the formation, or act as an organizer, of any association, federation, or similar entity, except that this paragraph shall not be construed to prohibit the provision of legal assistance to eligible clients; * *.

\* \* \* \* \* \*

benefit of any particular class of individuals other than the recipients of the legal assistance itself. *See Locricchio v. Legal Aid Society*, No. 78–0083, slip op. at 11–13 (D. Hawaii August 22, 1978) (unpublished opinion). In that case, the court construed provisions setting forth procedural requirements in the discipline of employees to be enacted for the especial benefit of the employees.[2] *Id. See* 42 U.S.C. §§ 2996e(b)(2), 2996j. The specific conferral of a right directly upon a class of persons which the court found present in sections 2996e(b)(2) and 2996j is not present in sections 2996e(b)(5), 2996e(c)(2), 2996f(a)(5), 2996f(a)(6), 2996f(b)(4), 2996f(b)(6), and 2996f(b)(7). Those statutes, significantly, articulate but a general ban or proscription from which a conferral of rights in legislators cannot be ascertained.

Further, nothing in the legislative history of the Act indicates that Congress intended to benefit legislators in limiting political activity and lobbying.

■ It has generally been recognized that the Legal Services Corporations Act was intended to benefit indigents who have legal grievances but who are unable to afford the legal means necessary to redress them. 42 U.S.C. § 2996(1)–(4). *See Wilson v. Legal Assistance*, No. A1–80–55, slip op. at 3–4 (D.N.D. August 14, 1980) (unpublished opinion); *Acuff v. Legal Services Corp.*, Civil No. CA–3–79–0858–D, slip op. at 5 (N.D. Tex. November 2, 1979) (unpublished opinion); *Legal Services Corp. v. Ehrlich*, 457 F.Supp. 1058, 1064 n.34 (D.Md. 1978). In prohibiting lobbying and political activity, Congress did not seek to protect its members from anything, but instead sought to protect the strength and integrity of the Corporation and its recipients. 42 U.S.C. § 2996(5). *See* 45 C.F.R. § 1608.1 (1980); 119 Cong.Rec. 20736–40 (1973). Congress wanted to direct the finances and resources of the Corporation toward the provision of legal services to the poor and insulate the Corporation from the political influence, abuses, and criticisms that had characterized the previous OEO–administered program. *See* George, "Development of the Legal Services Corporation," 61 Cornell L.Rev. 681, 703–04 (1976).

This court concludes that the statutory provisions in 42 U.S.C. § 2996, et seq., upon which plaintiffs rely, were not enacted by Congress with an intent to benefit legislators.

### 2. Legislative History

The pertinent legislative history of the Act, as it bears on the issue before the court, is accurately and concisely set forth by defendant Corporation in its brief at 15–17. That history is as follows:

The Legal Services Corporation Act proposed by the Administration in 1973 included the following provision, which would have authorized a private right of action to enforce the various "prohibitions" on Corporation and grantee activities in the bill:

"Any interested person may bring an action in a Federal district court *to enforce compliance with the prohibitions of or under this Act* by the Corporation or any recipient or any officer or employee of the Corporation or of any recipient."

S. 1815, § 1006(b)(6)(A), 93d Cong., 1st Sess., 119 Cong.Rec. 15589 (1973) (emphasis added); H.R.7824, § 6(c), 119 Cong. Rec. 20685 (1973). See also *id.* at 15588. This proposal was not included in the bill finally reported by either legislative committee, see H.R.Rep.No.93–247, 93d Cong., 1st Sess. (1973); S.Rep.No.93–495, 93d Cong., 1st Sess. (1973), and its deletion was expressly attacked by a dissenting Committee member. H.R.Rep.No.93–247, *supra*, at 27 (Minority views of Rep. Landgrebe).

---

**2.** It should be noted, however, that the court in *Locricchio v. Legal Aid Society*, No. 78–0083, slip op. at 13–14 (D. Hawaii August 22, 1978) (unpublished opinion), ultimately declined to imply a private cause of action in the employee/plaintiff, concluding, under the fourth factor enunciated in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1974), that the cause of action pled is traditionally a question of state law rendering an implied federal cause of action inappropriate.

When the bill reached the floor of the House, Rep. Dennis offered an amendment to reinstate the Administration's private right of action provision. 119 Cong.Rec. 20725 (1973). That amendment was defeated, *id.* at 20729, following a debate over whether authorization for civil actions was a necessary measure in order to curtail alleged abuses that had occurred under the OEO-funded program. *See * * * id.* at 20727 (remarks of Rep. Treen); *id.* at 20728 (remarks of Rep. Steiger); *ibid.* (remarks of Rep. Treen).

Congress was aware of the lobbying and political activities of the OEO-administered program and that the bill being considered failed to provide a private right of action to enforce the provisions of the bill directed to those abuses. Under these circumstances, Congress' refusal to expressly create a private cause of action as offered in the bill proposed by the administration and again in the Dennis amendment reflects a deliberate decision to rely exclusively on other means to enforce the provisions of the Act. *See National Railroad Passenger Corp. v. National Ass'n of Railroad Passengers,* 414 U.S. 453, 460–61, 94 S.Ct. 690, 694, 38 L.Ed.2d 646 (1974); *Wilson v. Legal Assistance, supra,* slip op. at 4; *Acuff v. Legal Services Corp., supra,* slip op. at 5–6. The legislative history clearly does not evince an intent to create a private cause of action.[3]

### 3. Consistency with Legislative Purpose

■ The third *Cort v. Ash* factor requires an inquiry into whether an implied cause of action is consistent with the underlying purpose of the legislation. For the reasons that follow I conclude it is not.

The statute expressly grants the Corporation the authority to insure compliance by recipients and their employees with the provisions of the Act. 42 U.S.C. § 2996e(b)(1)(A). The statute sets forth the administrative hearing procedure by which financial assistance to the recipients can be suspended or terminated and by which recipient employees may be disciplined. 42 U.S.C. § 2996j. *See* 42 U.S.C. §§ 2996e(b)(1)(A), 2996e(b)(2). Section 2996e(b)(5), after proscribing certain political activity, directs the board of directors of the Corporation to issue rules and regulations to enforce the proscriptions as well as those of 42 U.S.C. § 2996f(a)(5), including rules establishing remedies and procedures by which those remedies would be applied. These rules and regulations have been issued. 45 C.F.R. §§ 1612.5, 1618.4, 1618.5 (1980).

Congress has further directed the Corporation to "monitor and evaluate and provide for independent evaluations of programs supported in whole or in part under this subchapter to insure that the provisions of this subchapter and the bylaws of the Corporation and applicable rules, regulations, and guidelines promulgated pursuant to this subchapter are carried out." 42 U.S.C. § 2996f(d). This includes annual financial audits of the recipients, reports of which are submitted by the Corporation to the Comptroller General of the United States. 42 U.S.C. § 2996h(c).

The Corporation itself must report annually to both the President and to Congress, 42 U.S.C. § 2996g(c), and file a report of annual audits with the General Accounting Office, 42 U.S.C. § 2996h(a)(3). All reports required by the Corporation, including its annual report, must be maintained for five years and access to the reports for inspection by the public allowed. 42 U.S.C. § 2996g(d). In addition to the annual audit of the Corporation, the General Accounting Office may conduct an audit, the report of such audit to be submitted to Congress and to the President. 42 U.S.C. § 2996h(b)(1), (3).

· The Corporation's governing board of directors is appointed by and with the consent of the Senate for two year terms. 42 U.S.C. § 2996c(a).

---

**3.** Congress' intent not to create a private cause of action in the present statute is further evidenced by its consideration this past year of yet another amendment to authorize a private right of action. *See* H.R. 3480, 127 Cong.Rec. H3106 (daily ed. June 18, 1981).

■ The legislative scheme, therefore, is one of Corporation and, ultimately, congressional oversight.[4] The presence of a nonjudicial means of enforcement is indicative of a congressional intent not to create an implied private cause of action. *See Kissinger v. Reporters Comm. for Freedom of the Press, supra*, 445 U.S. at 148–49, 100 S.Ct. at 967–68; *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19–20, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979); *Network Project v. Corporation for Public Broadcasting*, 561 F.2d 963, 972–76 (D.C.Cir. 1977), *cert. denied*, 434 U.S. 1068, 98 S.Ct. 1247, 55 L.Ed.2d 770 (1978). The legislative scheme of the Legal Services Corporations Act of 1974 has been held to foreclose implication of a private right of action. *See Wilson v. Legal Assistance, supra*, slip op. at 4–5; *Acuff v. Legal Services Corp., supra*, slip op. at 6.

■ A private right of action in legislators to enforce the Act's lobbying and political activity prohibitions is inconsistent with the legislative scheme of nonjudicial enforcement set forth in the Act.

## 4. State Law

■ Although the interpretation and enforcement of a federal statute is not traditionally relegated to state law, the fact that this factor of *Cort v. Ash, supra*, is satisfied does not outweigh the otherwise clear congressional intent *not* to imply a private cause of action in the legislator-plaintiffs. *See Acuff v. Legal Services Corp., supra*, slip op. at 7.

### Cort v. Ash Conclusion

■ Judged under the criteria of *Cort v. Ash, supra*, it is clear, and this court holds, that Congress, in enacting the Legal Services Corporation Act of 1974, did not intend to create an implied cause of action.

### Criminal Statute—18 U.S.C. § 1913

Plaintiffs further rely upon 18 U.S.C. § 1913 as creating an implied cause of action. That criminal statute provides:

No part of the money appropriated by any enactment of Congress shall, in the absence of express authorization by Congress, be used directly or indirectly to pay for any personal service, advertisement, telegram, telephone, letter, printed or written matter, or other device, intended or designed to influence in any manner a Member of Congress, to favor or oppose, by vote or otherwise, any legislation or appropriation by Congress, whether before or after the introduction of any bill or resolution proposing such legislation or appropriation; but this shall not prevent officers or employees of the United States or of its departments or agencies from communicating to Members of Congress on the request of any Member or to Congress, through the proper official channels, requests for legislation or appropriations which they deem necessary for the efficient conduct of the public business.

Whoever, being an officer or employee of the United States or of any department or agency thereof, violates or attempts to violate this section, shall be fined not more than $500 or imprisoned not more than one year, or both; and after notice and hearing by the superior officer vested with the power of removing him, shall be removed from office or employment.

■ Criminal statutes are generally held to be for the especial benefit of no one individual or class but rather for the benefit of the public generally. *See Cort v. Ash*,

---

4. This legislative scheme of congressional oversight was reiterated in the House and Senate Reports on the 1977 amendments to the Act. The House Report stated in part: "The Legal Services Corporation Act assures that the Corporation is accountable directly and only to the Congress. That accountability mechanism has worked well and must be preserved." H.Rep. No.95–310, 95th Cong., 1st Sess. 6 (1977), *re-printed in* 1977 U.S.Code Cong. & Ad.News 4503, 4508. The Senate Report stated in part: "The Legal Services Corporation Act provides that the Corporation shall be accountable directly to the Congress. That accountability mechanism has worked well and must be preserved." S.Rep.No.95–172, 95th Cong., 1st Sess. 3 (1977).

*supra*, 422 U.S. at 79–80, 95 S.Ct. at 2088–2089. Attempts to imply a private cause of action under section 1913 have been uniformly rejected.[5] *See National Treasury Employees' Union v. Campbell*, 654 F.2d 784, 789–93 (D.C.Cir.1981); *American Trucking Ass'ns, Inc. v. Department of Transportation*, 492 F.Supp. 566, 568–69 (D.D.C.1980); *American Conservative Union v. Carter*, No. 79–2495, slip op. at 4–5 (D.D.C. December 14, 1979) (unpublished opinion). There is no reason to reiterate the analysis of these cases. I conclude that in enacting 18 U.S.C. § 1913, Congress did not intend to create a private cause of action.[6]

### The Moorhead Amendment

Finally, plaintiffs rely upon the Moorhead Amendment, Pub.L. 95–431, 92 Stat. 1021, 1045 (1978). The amendment, which was first attached as a rider to the statute appropriating funds to the Corporation for fiscal year 1979, provides:

> No part of this appropriation shall be used for publicity or propaganda purposes designed to support or defeat legislation pending before Congress or any State legislature.

*Id.* The rider was also attached to the appropriating statutes for fiscal years 1980 and 1981.

Riders of the type relied upon by plaintiffs have not generally been recognized as creating an implied cause of action in any particular class of individuals. *See National Treasury Employees' Union v. Campbell, supra,* 654 F.2d at 793–94; *American Trucking Ass'ns, Inc. v. Department of Transportation, supra,* 492 F.Supp. at 568–69. In *National Treasury Employees' Union v. Campbell, supra,* 654 F.2d at 793, the court rejected plaintiffs' attempt to imply a cause of action under almost identical language in section 607(a) of the Treasury, Postal Service and General Government Appropriations Act of 1979, Pub.L. 95–429, 92 Stat. 1001 (1978), in favor of individual lobbying groups, federal employees, or Congressmen.[7]

The rider in this case identifies no particular class of beneficiaries. It is just a general prohibition from which the courts decline to infer a private cause of action in a particular group. *See California v. Sierra Club, supra,* 101 S.Ct. at 1779; *National Treasury Employees' Union v. Campbell, supra,* 654 F.2d at 793–94. Further, the legislative history of the rider fails to reveal a congressional intent to create a cause of action in favor of legislators. The legislative history of the rider represents no more than a generalized concern that the appropriation be spent as directed under law. *See* 124 Cong.Rec. H5544 (daily ed. June 14, 1978).

This court concludes that an implied cause of action was not intended by Congress when it adopted the Moorhead Amendment, particularly because it relates to an Act in which a congressional intent to the contrary is evident.

---

5. A case in which a private cause of action was found to lie under 18 U.S.C. § 1913, *National Ass'n for Community Development v. Hodgson*, 356 F.Supp. 1399 (D.D.C.1973), decided before *Cort v. Ash, supra*, was expressly overruled by the same court in a later case, *National Treasury Employees' Union v. Campbell*, 482 F.Supp. 1122, 1125 (D.D.C.1980), *aff'd*, 654 F.2d 784 (D.C.Cir.1981).

6. Even were a private cause of action implied in section 1913, it is doubtful that it could be invoked in this case against these defendants. Section 1913, although containing broad precatory language, applies only to federal departments or agencies and officers or employees thereof. The Corporation, its president and research director, and, quite clearly, Iowa Legal Services are not federal agencies or officers under 18 U.S.C. § 1913. *See* 42 U.S.C. § 2996d(e)(1). While Congress specifically extended the coverage of several other federal statutes to the Corporation and its officers and employees, section 1913 was not so extended. *See* 42 U.S.C. §§ 2996c(g), 2996d(f) & 2996d(g).

7. Section 607(a) of the Treasury, Postal Service and General Government Appropriations Act of 1979, Pub.L. 95–429, 92 Stat. 1001 (1978), provides:

> No part of any appropriation contained in this or any other Act, or of the funds available for expenditure by any corporation or agency, shall be used for publicity or propaganda purposes designed to support or defeat legislation pending before Congress.

## EQUITY JURISDICTION

Plaintiffs alternatively assert that even if a cause of action cannot be implied under the statutes, this court nevertheless has an inherent common law equity power to create a right of action in plaintiffs for the equitable relief sought in this case.[8]

Several federal courts have recognized an "inherent power of the federal judiciary to enjoin [acts in violation of federal statutes.]" *Fleming v. Moberly Milk Products Co.*, 160 F.2d 259, 264 (D.C.Cir.), *appeal dismissed*, 331 U.S. 786, 67 S.Ct. 1304, 91 L.Ed. 1816 (1947). *See Westinghouse Elec. Corp. v. Schlesinger*, 542 F.2d 1190, 1209 (4th Cir. 1976); *American Trucking Ass'ns, Inc. v. Department of Transportation, supra*, 492 F.Supp. at 569. To the extent, however, that this inherent power proposition suggests a broad all-inclusive authority in federal courts to create a cause of action to enforce any statutory duty, it is a gross overstatement.

Statutory rights and obligations are established by Congress, and it is entirely appropriate for Congress, in creating these rights and obligations, to determine in addition who may enforce them and in what manner. For example, statutory rights and obligations are often embedded in complex regulatory schemes, so that if they are not enforced through private causes of action, they may nevertheless be enforced through alternative mechanisms, such as criminal prosecutions, see *Cort v. Ash, supra*, or other public causes of actions. See *Securities Investor Protection Corp. v. Barbour* [421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263], *supra*; *National Railroad Passenger Corp. v. National Assn. of Railroad Passengers*, 414 U.S. 453, 457 [94 S.Ct. 690, 692, 38 L.Ed.2d 646] (1974). In each case, however, the question is the nature of the legislative intent informing a specific statute, and *Cort* set out the criteria

through which this intent could be discerned.

*Davis v. Passman*, 442 U.S. 228, 241, 99 S.Ct. 2264, 2275, 60 L.Ed.2d 846 (1979). Plaintiffs have a cause of action that they can assert in this case to enforce *statutory* duties imposed upon defendants only if Congress created such a cause of action or intended it to be created. This court does not possess authority under the guise of "inherent equity jurisdiction" to create a cause of action to enforce statutory duties that is not otherwise granted or intended by Congress. See *National Treasury Employees' Union v. Campbell, supra*, 654 F.2d at 790 n.6. To hold otherwise would make meaningless the process of carefully ascertaining congressional intent in cases where the plaintiff asserts an implied cause of action for equitable relief. See *Kissinger v. Reporters Comm. for Freedom of the Press, supra*, 445 U.S. at 148–50, 100 S.Ct. at 967–68; *Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975); *National Railroad Passenger Corp. v. National Ass'n of Railroad Passengers, supra*. The legislative history traced at pages 8–9 of this memorandum opinion especially compels the conclusion that the court should not create a cause of action for plaintiffs.

## CONCLUSION

In essence, the plaintiffs invite the court to judicially create a cause of action that Congress chose not to create. The invitation is declined, and plaintiffs' complaint must be dismissed.

## STANDING, EXHAUSTION AND PRIMARY JURISDICTION

In view of the foregoing conclusions, defendants' alternative grounds for dismissal—lack of standing, failure to exhaust administrative remedies, and primary jurisdiction—need not be reached.

---

**8.** Plaintiffs do not ask this court to create substantive federal common law, but to create a cause of action by which the substantive law enacted by Congress may be enforced. For an articulation of the narrow circumstances under

which substantive "federal common law" may be developed, *see Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981).

## RULING AND ORDER OF DISMISSAL

Defendants' motions to dismiss are granted and plaintiffs' complaint is dismissed.