614 F.2d 662
 SPOKANE COUNTY LEGAL SERVICES, INC., Ben Franklin Legal Aid
Associates, Plaintiffs-Appellants,
v.
The LEGAL SERVICES CORPORATION, Defendant-Appellee.
SPOKANE COUNTY LEGAL SERVICES, INC., Ben Franklin Legal Aid
Associates, Plaintiffs-Appellees,
v.
The LEGAL SERVICES CORPORATION, Defendant-Appellant.
 Nos. 77-3200, 77-3179.
 United States Court of Appeals,
Ninth Circuit.
 Feb. 28, 1980.
 
 William Fremming Nielsen and Joseph F. Valente (argued), Spokane, Wash., for plaintiffs-appellants, cross-appellees; Hamblen, Gilbert & Brooke, P. S., Spokane, Wash., on brief.
 Robert H. Whaley (argued), for defendant-appellee, cross-appellant, Winston & Cashatt, Repsold, McNichols, Connelly & Driscoll, Spokane, Wash., on brief.
 Neil Haight, Steven L. Bunch, Montana Legal Services Ass'n, Helena, Mont., on brief, amicus curiae.
 Theodore R. Mitchell, Daniel H. MacMeekin, Robert L. Keogh, Micronesian Legal Services Corp., Saipan, Mariana Islands, on brief, amicus curiae.
 Appeals from the United States District Court for the Eastern District of Washington.
 Before COWEN,* Senior Judge, TRASK and HUG, Circuit Judges.
 COWEN, Senior Judge:
 
 
 1
 This case is before the court on cross-appeals from the judgment of the district court. Plaintiffs below, Spokane County Legal Services, Inc. (Spokane) and Ben Franklin Legal Aid Association (Ben Franklin), are both nonprofit corporations providing legal services to low income persons in various counties of eastern Washington. Defendant, Legal Services Corporation (LSC), is a private nonprofit corporation created by Congress in the Legal Services Corporation Act of 1974.[1] Pursuant to this Act, LSC makes grants to legal services programs such as those run by plaintiffs "for the purpose of providing financial support for legal assistance in noncriminal proceedings or matters to persons financially unable to afford legal assistance." 42 U.S.C. § 2996b(a) (1976). This action arose out of a decision by LSC to reorganize the delivery of such support in Washington state by transferring the funding of appellants' programs to a statewide program. Spokane and Ben Franklin sought declaratory and injunctive relief from the decision in the district court, but the court dismissed the complaint. We affirm the dismissal as to the first and fourth causes of action, but reverse the decision with respect to the issues raised by the second and third causes of action alleged in the complaint and remand the case for further proceedings in the district court.[2]
 
 I.
 The issues presented for decision are:
 
 2
 1. Does the district court have jurisdiction of the suit under 28 U.S.C. § 1331;
 
 
 3
 2. Were plaintiffs denied procedural due process in the action taken by LSC to terminate financial support for their programs, and3. What is the appropriate standard for judicial review of the LSC decision challenged in the second amended complaint?
 
 II.
 
 4
 On March 29, 1976, LSC awarded Spokane a 3-month grant to fund three legal services offices located between 71 and 111 miles outside the city of Spokane, where Spokane's main office was located. These three outlying offices, known as the Tri-County, Grant-Adams, and Asotin County offices, were part of Spokane's program, but had been funded by sources other than LSC in the past. During the period of the LSC grant, Spokane, the Washington State bar association, and various other groups began a study of the structure of the legal services program in Washington. After the 3-month grant had expired, LSC continued funding for the three offices on a month-to-month basis while the study continued. As a result of that study, LSC proposed on September 15, 1976, to transfer funding for the three offices from Spokane to a new statewide legal services program, Evergreen Legal Services (Evergreen). The regional director of LSC explained that the reason for this transfer of funding was:
 
 
 5
 In the communities served by the three offices, Evergreen Legal Services is more capable than Spokane County Legal Services of maintaining the highest quality of service and professional standards, and is also more capable of ensuring the delivery of legal services in the most economical and effective manner * * *.
 
 
 6
 Spokane objected to the proposed transfer of funding and requested that LSC conduct a hearing on the proposal. LSC initially refused to conduct such a hearing, whereupon Spokane filed suit for declaratory and injunctive relief.[3] Spokane objected to the notice it had received of the transfer and, inter alia, sought to enjoin the transfer of funding until it received proper notice and a hearing under section 1011 of the Legal Services Corporation Act.[4] After suit was filed, LSC agreed to conduct a hearing on the proposed transfer of funding and the district court denied the injunction.
 
 
 7
 LSC appointed the special assistant to the President of LSC to conduct the hearing. All together, 5 days of hearings were held with the first day in Spokane and each of the other days in the towns where the three county offices and Ben Franklin's office were located. Oral testimony and documentary evidence were introduced and cross-examination of witnesses was allowed. After the hearings were concluded in the latter part of December 1976, the hearing examiner issued a report in which he recommended that the Tri-County office continue to be funded through Spokane, but otherwise approved the proposed transfers of funding to Evergreen. The President of LSC adopted the recommendations of the hearing examiner and issued a final decision on the transfer of funding on February 9, 1977.
 
 
 8
 In May 1977, LSC moved for summary judgment in the district court on the grounds that the defect in the notice of the funding transfer, of which plaintiffs had complained, had been remedied and that the hearings which Spokane had requested had been held. Plaintiffs opposed LSC's motion and moved to file a second amended complaint. The second amended complaint set forth four causes of action. The first and fourth causes complained that the appointment of a hearing examiner, who was an employee of LSC, violated the fair hearing requirement of section 1011 of the Act and the due process clause of the Fifth Amendment. The second cause of action complained that LSC's decision was arbitrary and capricious, because it was not supported by the evidence. The third cause of action was closely tied to the second, and alleged that the decision violated section 1007(a)(3) of the Act,[5] because the action taken by LSC would not result in the most effective and economical delivery of legal services to the communities affected.
 
 
 9
 The district court held a hearing on these motions and issued a decision in an order dated June 20, 1977. In the order, the district court allowed the filing of the second amended complaint; denied LSC's motion for summary judgment on the basis that it was moot in light of the causes of action set forth in the second amended complaint, and then dismissed the second amended complaint on the ground that the court lacked subject matter jurisdiction to review LSC's decision.[6] Plaintiffs then filed a motion for reconsideration of the dismissal.
 
 
 10
 The district court denied the motion for reconsideration in an order dated July 26, 1977, which found that in terminating financial assistance to plaintiffs, LSC had complied with all provisions of the law and all applicable regulations, both in affording the plaintiffs notice and opportunity for a timely, full, and fair hearing, and in the denial of the refunding. The order also affirmed in all respects, the "Summary Judgment, Findings of Fact, and Conclusions of Law" made in the previous order of June 20, 1977, and stated that:
 
 
 11
 Plaintiffs' said Second Amended Complaint does not state a claim upon which relief can be granted, and therefore should be and hereby is dismissed, pursuant to Rule 12(b)(6) and (c), and Rule 56, Federal Rules of Civil Procedure.
 
 III.
 
 12
 We consider first whether the district court had subject matter jurisdiction of the claims set out in plaintiffs' second amended complaint.[7] They contend that jurisdiction is conferred by 28 U.S.C. § 1331 (1976), which provides in pertinent part that:
 
 
 13
 The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy * * * arises under the Constitution, laws, or treaties of the United States * * *.
 
 
 14
 The claims in the second amended complaint raise questions regarding the construction of two different sections of the Legal Services Corporation Act. Spokane and Ben Franklin contended that the use of an LSC employee to conduct the administrative hearings denied them the "full" and "fair" hearing to which they were entitled by section 1011 of the Act and that the transfer of funding violates LSC's mandate under section 1007 "to provide the most economical and effective delivery of legal assistance." The claims, therefore, "really and substantially" involve "a dispute or controversy respecting the validity, construction, or effect of (a law of the United States), upon the determination of which the result depends." Standage Ventures, Inc. v. State of Arizona, 499 F.2d 248, 249 (9th Cir. 1974), quoting Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205 (1912). Nor can there be any question but that the Legal Services Corporation Act is "a direct and essential element of the plaintiff's cause of action." Smith v. Grimm, 534 F.2d 1346, 1350 (9th Cir.) cert. denied 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976). While there is a dispute as to whether the complaint stated a claim on which relief can be granted, it is not contended that the claim is frivolous or insubstantial. See Hagans v. Lavine, 415 U.S. 528, 536-43, 94 S.Ct. 1372, 1378-82, 39 L.Ed.2d 577 (1974). We conclude, therefore, that the district court has subject matter jurisdiction over the suit by virtue of 28 U.S.C. § 1331. See Legal Services Corp. v. Ehrlich, 457 F.Supp. 1058, 1061 (D.Md.1978); National Paralegal Institute v. Legal Services Corp., Civ. No. 76-1260 (D.D.C. Aug. 12, 1976).
 
 IV.
 
 15
 Having determined that the district court has jurisdiction, we first consider plaintiffs' challenge to the fairness of the defunding decision on the ground that it was procedurally defective.
 
 
 16
 The first cause of action of the second amended complaint alleges that LSC did not provide an independent, uninvolved, neutral hearing examiner to preside over the hearing, and that because of the close relationship of the hearing examiner by reason of his employment status with those directly involved in the dispute, he could not render an unbiased decision. The fourth cause of action alleges that the failure to provide an independent, neutral, and impartial hearing examiner constituted a denial of plaintiffs' right to due process as guaranteed by the Fifth Amendment.
 
 
 17
 Plaintiffs' attack on the impartiality of the hearing examiner is without merit. There is no suggestion in the complaint or in the briefs filed in the district court by plaintiffs that the hearing examiner had any personal bias or animosity against plaintiffs or that he had a pecuniary interest in the controversy. In response to the allegations, LSC submitted to the district court an affidavit which was executed by the hearing examiner and filed May 25, 1977. He stated that prior to his appointment as hearing examiner, he had not known that a transfer of funding from plaintiffs was under consideration, and that he had never heard of Evergreen Legal Services. He also stated that before his appointment, he did not discuss the issues involved in the review proceedings with anyone employed by LSC. In addition, the affidavit averred that no objection was made by plaintiffs, or anyone acting for them, at the prehearing conference, at any of the hearings, or in plaintiffs' post hearing memorandum, to his appointment or service as hearing examiner. Plaintiffs made no effort to controvert this affidavit at any time during the proceedings in the district court. On the contrary, in their brief in support of their motion for reconsideration, they repeated the contention in their complaint that they were entitled to an independent, neutral hearing examiner to preside at the defunding proceedings, and stated that Congress was then (on June 30, 1977) amending the law to require neutral hearing examiners.
 
 
 18
 The appointment of an employee of LSC to conduct the hearing was specifically authorized by the regulations, 45 C.F.R. § 1606.12(a). Moreover, the existence of the employer-employee relationship between LSC and the hearing examiner did not render the proceedings either unfair or violative of due process. Withrow v. Larkin, 421 U.S. 35, 47-49, 95 S.Ct. 1456, 1464-1465, 43 L.Ed.2d 712 (1974); Hortonville Joint School District No. 1 v. Hortonville Education Association, 426 U.S. 482, 491-97, 96 S.Ct. 2308, 2313-2316, 49 L.Ed.2d 1 (1976), and National Paralegal Institute v. Legal Services Corp., supra. The allegations of the complaint are not sufficient to overcome the "presumption of honesty and integrity in those serving as adjudicators." Withrow v. Larkin, 421 U.S. at 47, 95 S.Ct. at 1464. The district court correctly held that the first and fourth causes of action of the complaint did not state a claim upon which relief can be granted.
 
 
 19
 Plaintiffs attempted to bolster their position by relying on the amendment to section 1011 of the Act, which became effective December 28, 1977, and required that hearings thereafter be conducted by independent hearing examiners (see n. 4, supra ). The district court properly rejected this argument. The amendment did not become effective until a year after the hearings on plaintiffs' claim had been concluded, and the House Conference Report on the bill which added the amendment specifically stated that it modified existing law. See House Conference Report No. 95-825, 95th Cong., 1st Sess. (1977), reprinted in U.S.Code Cong. & Admin.News, pp. 4503, 4530, 4539. Thus, Congress recognized the legality of the practice followed by LSC in this instance.
 
 
 20
 In addition to the foregoing, the district court found, and it is not disputed, that 5 days of hearings were held; that the proceedings were reported by a court reporter and that counsel for all parties were permitted to examine and cross-examine the witnesses; that a prehearing conference was held in which the parties met with the hearing examiner and were represented by counsel, and that post-hearing memoranda were submitted by counsel for all parties. All of these proceedings were in strict compliance with the applicable regulations. See 45 C.F.R. part 1606 (1977).
 
 
 21
 In sum, we find that plaintiffs were accorded all of the procedural due process to which they were by law entitled, and therefore, we affirm the decision of the district court insofar as it dismissed the first and fourth causes of action of the second amended complaint.
 
 V.
 
 22
 Plaintiffs' principal contention in this appeal is that they are entitled to judicial review of the LSC decision on the merits of their claims, which are set forth in the second and third causes of action of the amended complaint.[8] As previously stated, the second cause of action alleges that the LSC decision was arbitrary and capricious, and not supported by the evidence. In their third cause of action, plaintiffs claim that section 1007(a)(3) of the Act, 42 U.S.C. § 2996f(a)(3) (1976), was violated because the delivery system selected by LSC does not result in the "economical and effective delivery of legal assistance to persons in both urban and rural areas." (See n. 5, supra ).
 
 
 23
 We agree with plaintiffs that these allegations of the complaint raise issues which require a reversal of the district court's decision and a remand for review of the whole record, or those portions thereof which are relied upon by the parties.[9] Our examination of the district court's orders and the information furnished by counsel for the parties indicates that the court below did not review the transcript of testimony and the documentary evidence adduced at the hearings before entering the orders from which plaintiffs have appealed.[10]
 
 
 24
 We next consider, as plaintiffs have urged us to do, the standard which the district court should use in its review of the LSC decision. Looking first to the provisions of the section of the statute in issue, we find that "economical and effective" is a broad term, the application of which necessarily "requires the use of informed discretion" by LSC. Securities & Exchange Commission v. Chenery Corporation, 322 U.S. 194, 208, 67 S.Ct. 1575, 1583, 91 L.Ed. 1995 (1947). However, we find no criteria, either in the Act or in the legislative history, against which a reviewing court can measure LSC's compliance with this statutory provision. Moreover, the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701-706, do not extend to the decision of LSC. Section 1005 of the Legal Services Corporation Act provides that the corporation shall not be considered a department, agency, or instrumentality of the Federal Government, 42 U.S.C. § 2996d(e)(1) (1976). Since LSC is not an agency of the Federal Government, its decisions are not reviewable under the APA. Legal Services Corp. v. Ehrlich, 457 F.Supp. at 1063.
 
 
 25
 In view of these circumstances, we think it appropriate to adopt the rule which the Supreme Court fashioned for judicial review of administrative decisions before the advent of the APA, which was enacted June 11, 1946, 60 Stat. 237. If there is a rational basis for the agency decision and it is supported by some evidence, the decision should be accepted by the reviewing court.[11] Rochester Telephone Corp. v. United States, 307 U.S. 125, 140, 59 S.Ct. 754, 762, 83 L.Ed. 1147 (1939); NLRB v. Hearst Publications, Inc., 322 U.S. 111, 130-31, 64 S.Ct. 851, 860, 88 L.Ed. 1170 (1944), and Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286-87, 54 S.Ct. 692, 694, 78 L.Ed. 1260 (1934).
 
 
 26
 (I)n reviewing the Board's ultimate conclusions, it is not the court's function to substitute its own inferences of fact for the Board's, when the latter have support in the record. (citations omitted). (NLRB v. Hearst Publications, Inc., 322 U.S. at 130, 64 S.Ct. at 860.)
 
 
 27
 A rational basis for the agency decision exists if it articulates a "rational connection between the facts found and the choice made." Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962).
 
 
 28
 Since the "substantial evidence" test of the APA does not apply, we look to the decisions of other courts which have construed similar statutory provisions to determine the quantum of evidence needed to sustain the decision. In cases involving a statutory provision for a "full and fair hearing," the courts have held that all that is required is some evidence to support the decision. International Brotherhood of Boilermakers v. Hardeman, 401 U.S. 233, 246, 91 S.Ct. 609, 617, 28 L.Ed.2d 10 (1971); Lewis v. American Federation of State, County & Municipal Employees, 407 F.2d 1185, 1194-95 (3d Cir. 1969) cert. denied 396 U.S. 866, 90 S.Ct. 145, 24 L.Ed.2d 120 (1969).
 
 VI CONCLUSION
 
 29
 For the reasons stated, the decision of the district court with respect to the second and third causes of action of the second amended complaint is reversed and the case is remanded to that court with the following instructions:
 
 
 30
 1. The party having possession of the administrative record, including the evidence adduced at the hearings, is directed to file that record with the district court at a time fixed by order of that court;
 
 
 31
 2. The district court should grant leave to either party to file a motion and/or cross-motion for summary judgment within the time ordered by the court. The motions for summary judgment shall be limited to the issues raised by the second and third causes of action of the complaint and to the administrative record. See Adams v. United States, 318 F.2d 861, 866-67 (9th Cir. 1963); and
 
 
 32
 3. Thereafter, the district court should review the whole record, including the evidence adduced at the administrative hearings and the LSC decision, in accordance with the standards discussed in this opinion and decide whether the LSC decision should be upheld or set aside.
 
 
 
 *
 Wilson Cowen, Senior Judge, United States Court of Claims, sitting by designation
 
 
 [1]
 Pub.L. 93-355, 88 Stat. 378, as amended by Pub.L. 95-222, 91 Stat. 1619, codified at 42 U.S.C. §§ 2996 et seq. (1976)
 
 
 [2]
 In reaching our decision, we have read and considered the briefs of the amici curiae except for issues briefed by them but which were not raised by the plaintiffs in the district court. See Browzin v. Catholic University of America, 174 U.S.App.D.C. 60, 66-67, 527 F.2d 843, 849-50 (D.C.Cir. 1975), and United States v. Allegheny-Ludlum Industries, Inc., 517 F.2d 826, 840, n. 13 (5th Cir. 1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976)
 
 
 [3]
 The complaint was later amended to include Ben Franklin as a complainant. The proposed reorganization included the transfer of funding from Ben Franklin to Evergreen
 
 
 [4]
 At the time suit was filed, section 1011 provided as follows:
 "The Corporation shall prescribe procedures to insure that
 "(1) financial assistance under this (Act) shall not be suspended unless the grantee, contractor, or person or entity receiving financial assistance under this (Act) has been given reasonable notice and opportunity to show cause why such action should not be taken; and
 "(2) financial assistance under this (Act) shall not be terminated, an application for refunding shall not be denied, and a suspension of financial assistance shall not be continued for longer than thirty days, unless the grantee, contractor, or person or entity receiving financial assistance under this (Act) has been afforded reasonable notice and opportunity for a timely, full, and fair hearing." (42 U.S.C. § 2996j (1976))
 Effective December 28, 1977, section 1011 was amended to read:
 "The Corporation shall prescribe procedures to insure that
 "(1) financial assistance under this (Act) shall not be suspended unless the grantee, contractor, or person or entity receiving financial assistance under this (Act) has been given reasonable notice and opportunity to show cause why such action should not be taken; and
 "(2) financial assistance under this (Act) shall not be terminated, an application for refunding shall not be denied, and a suspension of financial assistance shall not be continued for longer than thirty days, unless the grantee, contractor, or person or entity receiving financial assistance under this (Act) has been afforded reasonable notice and opportunity for a timely, full, and fair hearing, and, when requested, such hearing shall be conducted by an independent hearing examiner. Such hearing shall be held prior to any final decision by the Corporation to terminate financial assistance or suspend or deny funding. Hearing examiners shall be appointed by the Corporation in accordance with procedures established in regulations promulgated by the Corporation."
 (42 U.S.C. § 2996j (1976))
 
 
 [5]
 Section 1007(a)(3) provides as follows:
 "(a) With respect to grants or contracts in connection with the provision of legal assistance to eligible clients under this (Act), the Corporation shall
 "(3) insure that grants and contracts are made so as to provide the most economical and effective delivery of legal assistance to persons in both urban and rural areas; * * * " (42 U.S.C. § 2996f(a)(3) (1976))
 
 
 [6]
 Spokane Cty. Legal Serv. v. Legal Serv. Corp., 433 F.Supp. 278 (E.D.Wash.1977)
 
 
 [7]
 LSC contends that the jurisdictional question need not be reached on this appeal, because of the district court's ruling on plaintiffs' motion for reconsideration. However, the district court's order on the motion for reconsideration stated that the earlier order dismissing the complaint for lack of jurisdiction was "affirmed in each and every respect." Because we disagree with that ruling with respect to the second and third causes of action in the complaint, it is necessary to decide the jurisdictional question
 
 
 [8]
 Reply Brief for Appellants at p. 4
 
 
 [9]
 We do not suggest that the evidence may not support the findings of the hearing examiner. However, the record of the hearing on which he based his decision is not before us and it is impossible to determine whether the LSC decision has evidentiary support without an examination of that record
 
 
 [10]
 Counsel for the parties have informed us that the transcript of testimony contains approximately 1,100 pages and that there are a number of documentary exhibits
 
 
 [11]
 We think there is no discernible difference between the standard we have adopted and the "arbitrary and capricious" standard which plaintiffs have advocated. "In the eyes of the law an administrative action not supported by evidence or lacking a rational basis, is deemed arbitrary and capricious." O'Beirne v. Overholser, 193 F.Supp. 652, 656 (D.D.C. 1961), rev'd on other grounds, 112 U.S.App.D.C. 267, 302 F.2d 852 (D.C.Cir. 1961)