Filed: August 3, 1999

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

Nos. 98-2165(L)
(CA-97-1311-6-20)

---

Regional Management Corp., etc., et al,

                              Plaintiffs - Apellees,

        versus

Legal Services Corporation,

                              Defendant - Appellant.

---

O R D E R

---

The court amends its opinion filed July 28, 1999, as follows:

On page 2, section 3, line 7 -- counsel's name is corrected to read "Benjamin T. Zeigler."

On page 10, footnote 7, line 4 -- a period is added in the citation after "D.C. Cir."

                              For the Court - By Direction


                              /s/ Patricia S. Connor
                                       Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

| | |
|---|---|
| REGIONAL MANAGEMENT CORPORATION, INCORPORATED; REGIONAL FINANCE CORPORATION OF SOUTH CAROLINA, INCORPORATED, and REGIONAL FINANCE CORPORATION OF<br><br>GEORGIA, INCORPORATED,<br>Plaintiffs-Appellees,<br><br>v.<br><br>LEGAL SERVICES CORPORATION,<br>Defendant-Appellant. | No. 98-2165 |
| REGIONAL MANAGEMENT CORPORATION, INCORPORATED; REGIONAL FINANCE CORPORATION OF SOUTH CAROLINA, INCORPORATED, and REGIONAL FINANCE CORPORATION OF<br><br>GEORGIA, INCORPORATED,<br>Plaintiffs-Appellants,<br><br>v.<br><br>LEGAL SERVICES CORPORATION,<br>Defendant-Appellee. | No. 98-2166 |

Appeals from the United States District Court
for the District of South Carolina, at Greenville.
Henry M. Herlong, Jr., District Judge.
(CA-97-1311-6-20)

Argued: May 5, 1999

Decided: July 28, 1999

Before MURNAGHAN, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Vacated and remanded in part and affirmed in part by published opinion. Judge Luttig wrote the opinion, in which Judge Williams joined. Judge Murnaghan wrote a separate concurring opinion.

_____

**COUNSEL**

**ARGUED:** Susan Macdonald Glenn, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina, for Appellant. Gregory J. English, WYCHE, BURGESS, FREEMAN & PARHAM, P.A., Greenville, South Carolina, for Appellees. **ON BRIEF:** Joel H. Smith, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina, for Appellant. Wallace K. Lightsey, Benjamin T. Zeigler, WYCHE, BURGESS, FREEMAN & PARHAM, P.A., Greenville, South Carolina, for Appellees.

_____

**OPINION**

LUTTIG, Circuit Judge:

Appellees Regional Management Corp. and its affiliates (collectively "Regional") filed a complaint with the Legal Services Corporation alleging that certain recipients of Legal Services' funds violated the Legal Services Corporation Act ("LSC Act") when they lobbied against Regional before the South Carolina General Assembly and the Georgia Commissioner of Insurance. Legal Services concluded that neither instance of lobbying violated the LSC Act, and Regional sought judicial review in federal district court of the Corporation's resolution of its complaint. The district court ruled in favor of Regional with regard to the lobbying in South Carolina, but in favor of Legal Services with regard to the lobbying in Georgia.

For the reasons that follow, we conclude that there is no basis for judicial review of Legal Services' decision on Regional's complaint.

2

We therefore vacate the district court's judgment and opinion and dismiss Regional's claim. We also affirm the district court's dismissal of Regional's suit against Legal Services under the Freedom of Information Act, because that suit is not yet ripe.

I.

Appellant Legal Services, which Congress established by the LSC Act, 42 U.S.C. §§ 2996-2996l, disburses federal money to local legal services programs, known as "recipients," to support legal assistance to the poor in civil matters. The LSC Act, however, imposes numerous restrictions on recipients' use of Legal Services' funds, id. § 2996f(a)&(b), and charges Legal Services with enforcing those restrictions, id. § 2996e(b).

Among the funding restrictions that the LSC Act imposes is a ban on lobbying federal, state, or local officials, whether executive or legislative. Id. § 2996f(a)(5). There are some exceptions to this ban, however, such as for lobbying that is "necessary to the provision of legal advice and representation" of an "eligible client . . . with respect to such client's legal rights and responsibilities," or for testimony or similar activity that has been requested by an agency or legislative body. Id. Regulations promulgated by Legal Services pursuant to the LSC Act implement the lobbying ban and the exceptions. See 45 C.F.R. pt. 1612.**1**

Appellee Regional is a lender, apparently concentrating on providing credit to those who have poor credit histories or are otherwise high credit risks. In 1994-95, the time of the underlying events in this case, Legal Services' recipients included Palmetto Legal Services, Inc. ("PLS"), South Carolina Legal Services Association ("SCLSA"), and the Neighborhood Legal Assistance Program ("NLAP"). SCLSA received its funding via PLS. During this time, Susan Berkowitz, an attorney, registered lobbyist, and the director of SCLSA, successfully

_____

**1** Congress has, in recent years, used annual appropriations bills to impose further restrictions on lobbying, which has led Legal Services to modify its regulations. See Legal Aid Soc'y of Hawaii v. Legal Servs. Corp., 145 F.3d 1017, 1021-22 (9th Cir.), cert. denied, 119 S. Ct. 539 (1998).

3

lobbied the South Carolina General Assembly to pass Act 135 of 1995, which imposed severe restrictions upon companies such as Regional, costing it, Regional contends, millions of dollars in lost revenue. Soon thereafter, Berkowitz, joined by employees of PLS and NLAP, journeyed to Georgia at the request of the Georgia Commissioner of Insurance, where they successfully opposed Regional's application for a license to do business in that State.

In February 1996, Regional filed a complaint with Legal Services pursuant to the complaint procedure of 45 C.F.R. § 1618.3, claiming that both the South Carolina and the Georgia lobbying violated the LSC Act and the then-applicable regulations. Soon thereafter, Regional, concerned that Legal Services might be receiving inaccurate information from the recipients, Berkowitz, and others, filed several requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, which applies to Legal Services pursuant to 42 U.S.C. § 2996d(g), for all documents that Legal Services had created or received as part of the investigation. Legal Services denied these requests, invoking its policy of not releasing documents relating to an ongoing investigation to a target of that investigation and concluding that the policy should extend to Regional's request. In December 1996, Legal Services issued its decision, concluding that there was no violation of the LSC Act or regulations in either lobbying incident and, thus, that no disciplinary action was needed. It thereupon produced the documents that Regional had requested under FOIA.

Regional filed the present action in the federal district court in May 1997, seeking "judicial review" of Legal Services' "final agency action." Regional requested a declaratory judgment that the lobbying violated the LSC Act; restitution of funds to Legal Services; termination of funding to PLS, SCLSA, and NLAP;[2] and termination of the offending employees of those recipients. In a second cause of action, Regional alleged violations of FOIA.

The district court, in a thorough opinion, 10 F. Supp. 2d 565 (D. S.C. 1998), first concluded that it had jurisdiction to hear Regional's

_____

[2] Although SCLSA apparently no longer receives funds from Legal Services, PLS still does. We therefore reject Legal Services' claim that Regional's suit is moot regarding the South Carolina incident.

4

challenge to Legal Services' decision. Although the court agreed with the numerous courts that have held that the LSC Act creates no private right of action, and also concluded that the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., do not provide a basis for reviewing Legal Services' decision, see 42 U.S.C. § 2996d(e)(1), it followed the lead of several courts that have nonetheless found authority to review certain Legal Services actions under a pre-APA standard of review, which requires a court to consider only whether an agency action has a rational basis. The district court viewed this standard of review, however, as functionally identical to the APA's "arbitrary and capricious" standard of review, see 5 U.S.C. § 706(2)(A).

On the merits, the district court first held that there was no rational basis for Legal Services' conclusion that Berkowitz's lobbying in South Carolina was in the service of a client. That conclusion by Legal Services, the court explained, was devoid of factual support, and the lobbying was thus a blatant violation of the LSC Act and regulations. The court held that Legal Services had a rational basis for concluding that the Georgia lobbying fell under the exception for testimony requested by a governmental official. Finally, the court dismissed Regional's FOIA claim as moot because Regional had received the requested documents.

Legal Services appeals from the district court's ruling with regard to the South Carolina lobbying and chiefly argues that the district court should not have reached the merits of the dispute regarding that lobbying incident (or the one in Georgia), because there is no basis for judicial review of Legal Services' decision on Regional's complaint. Regional cross-appeals from the district court's ruling on the Georgia lobbying and also from the dismissal of its FOIA claim.

II.

The chief, and ultimately dispositive, issue before us is whether Legal Services' decision that Legal Services' recipients did not illegally lobby against Regional in either South Carolina or Georgia is subject to judicial review. Because Congress has exempted such a decision by Legal Services from review under the APA, and because nothing in the LSC Act itself provides Regional a private right of

action against Legal Services, we conclude that Regional has no basis for obtaining judicial review of Legal Services' resolution of its complaint.

There are generally only two possible bases for judicial review of federal agency action. First, and most often applicable, is the APA, which "provides the generally applicable means for obtaining judicial review of actions taken by federal agencies." Clouser v. Espy, 42 F.3d 1522, 1528 n.5 (9th Cir. 1994). Second, a substantive statute may provide a private right of action for judicial review of an agency action. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 882 (1990) (suggesting that only a "specific authorization in the substantive statute" or "the general review provisions of the APA" would permit judicial review of the agency action that respondent challenged); id. (noting that respondent "does not contend that either[of the substantive statutes that the agency allegedly violated] provides a private right of action for violations of its provisions. Rather, respondent claims a right to judicial review under . . . the APA."); Worthington Compressors, Inc. v. Costle, 662 F.2d 45, 49-50 (D.C. Cir. 1981) (holding that APA provided "appellants' only basis for judicial review," since Noise Control Act, which agency had allegedly violated, provided no private right of action). See also Chrysler Corp. v. Brown, 441 U.S. 281, 316-17 (1979); Jersey Heights Neighborhood Ass'n v. Glendening, 174 F.3d 180, 1999 WL 184610, * 3, 8-9 (4th Cir. 1999).**3**

_____

**3** The Supreme Court has suggested that there may be some exceptional cases where judicial review of agency action would always be available, even if Congress did not specifically authorize it (through the APA or otherwise) or actually precluded it explicitly, or at least that there are certain areas where the presumption in favor of judicial review is particularly strong. The two chief areas of this sort appear to be constitutional claims, see Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 672-73, 681 n.12 (1986); see also Webster v. Doe, 486 U.S. 592, 602 (1988); Heckler v. Chaney, 470 U.S. 821, 838 (1985); cf. Lebron v. National R.R. Passenger Corp., 513 U.S. 374, 392 (1995), and claims by a party facing a governmental action against it for violating regulations or laws whose applicability or validity it wishes to challenge, see Adamo Wrecking Co. v. United States, 434 U.S. 275, 278-79, 283 (1978); cf. F.C.C. v. Schreiber, 381 U.S. 279, 286-88 (1965). But Regional raises neither sort of claim, nor do we think any other special circumstance

6

When Congress in a substantive statute has not explicitly created a private right of action for review of an agency action, an implied one may exist in favor of a particular plaintiff, but only if Congress "intended to create the private remedy sought by the plaintiff[ ]." Suter v. Artist M., 503 U.S. 347, 364 (1992). See Cort v. Ash, 422 U.S. 66 (1975) (setting out factors to guide this determination). The burden is on the plaintiff to demonstrate such an intent, Suter, 503 U.S. at 364, and the requirement in order for a plaintiff to succeed is "a stringent one," Donaldson v. Department of Labor, 930 F.2d 339, 347-48 (4th Cir. 1991), particularly given the Court's generally "restrictive attitude," id., toward creating implied rights of action.

Applying the above rules to the particular agency action that Regional challenges -- that is, Legal Services' decision, in response to Regional's complaint, that its recipients did not violate 42 U.S.C. § 2996f(a)(5) when they lobbied against Regional -- it is clear that judicial review of such an action is not available to Regional. The APA's judicial review provisions unquestionably do not apply, and the LSC Act does not provide a private right of action to Regional to challenge such a decision by Legal Services.

First, the LSC Act, in conjunction with the APA, precludes judicial review under the APA of decisions such as the present one. The LSC Act provides that Legal Services "shall not be considered a department, agency, or instrumentality of the Federal Government . . . [e]xcept as otherwise specifically provided in this subchapter." 42 U.S.C. § 2996d(e)(1). With the exception of the two subsections immediately following this provision, id.§§ 2996d(f)&(g), which relate to particular aspects of employee benefits and to the applicability of FOIA to Legal Services, respectively, there is no provision in the LSC Act that appears to "specifically provide[ ]" for considering Legal Services to be a federal agency.**4**  More particularly, no provi-

_____

exists in this case. Indeed, if ever congressional preclusion of judicial review of an agency action were allowed, it would be here, where Regional, at bottom, is merely challenging a quasi-adjudication by Legal Services involving not the rights of Regional but those of Legal Services' own recipients.

**4** See also 42 U.S.C. § 2996c(g) (applying open-meeting requirements of 5 U.S.C. § 552b to Legal Services' Board and advisory councils). Cf. 5 U.S.C. App. § 8G(a)(2) (providing that Legal Services is a "Federal entity" for purposes of Inspector General Act).

7

sion of the LSC Act "specifically provide[s]" for considering Legal Services to be an agency with regard to its resolution of complaints alleging lobbying in violation of section 2996f(a)(5). Therefore, Legal Services may "not be considered," id.§ 2996d(e)(1), a federal agency for purposes of the action that Regional challenges. Since the APA's judicial review provisions apply only to action by a federal agency, see 5 U.S.C. § 702; id. § 704; see also Franklin v. Massachusetts, 505 U.S. 788, 796 (1992), judicial review of Legal Services' decision on Regional's complaint is not available under the APA. **5**

Second, the LSC Act creates no private right of action for Regional against Legal Services. It is undisputed that the Act provides no explicit private right of action, and there is no basis for finding that Congress intended to create an implied private right of action for Regional to challenge Legal Services' application of section 2996f(a)(5). Regional has certainly not satisfied its burden of showing an intent by Congress to create a right of action-- in its briefs it never even discusses the standards for meeting that burden.**6** Further-

_____

**5** Our conclusion that there is no judicial review under the APA of the action that Regional challenges is consistent with the view of every other circuit court to consider the APA's applicability to actions by Legal Services. See Texas Rural Legal Aid, Inc. v. Legal Servs. Corp., 940 F.2d 685, 696 (D.C. Cir. 1991); San Juan Legal Servs., Inc. v. Legal Servs. Corp., 655 F.2d 434, 438-39 (1st Cir. 1981); Spokane County Legal Servs., Inc. v. Legal Servs. Corp., 614 F.2d 662, 669 (9th Cir. 1980). See also Lebron v. National R.R. Passenger Corp., 513 U.S. 374, 391-92 (1995).

**6** To the extent that Regional does make an argument that an implied right of action exists in a case such as this, that argument appears to be twofold, and is unconvincing. First, Regional contends that because section 2996f(a)(5) imposes a duty on Legal Services to enforce its limitations, see 42 U.S.C. § 2996f(a)(5) ("[T]he Corporation shall . . . insure that no funds made available to recipients" are used for unauthorized lobbying), there must be some judicial means for Regional to enforce this duty. Regional's conclusion, however, does not follow from its premise, because Congress need not, and indeed often does not, rely on private parties to enforce statutory duties. See,e.g., Suter v. Artist M., 503 U.S. 347, 360-61, 363-64 (1992); California v. Sierra Club, 451 U.S. 287, 295 (1981). Such is the case in the LSC Act. See Grassley v. Legal Servs. Corp., 535 F. Supp. 818, 824-25 (S.D. Iowa 1982) (surveying the LSC

8

more, we find no reason to suppose that Congress, while exempting from judicial review under the APA Legal Services' resolution of complaints involving section 2996f(a)(5), nevertheless, through its silence in the LSC Act, intended to grant a private right of action to parties such as Regional to challenge that very same action. See Carlin v. McKean, 823 F.2d 620, 622-23 (D.C. Cir. 1987). Cf. Clarke v. Securities Indus. Ass'n, 479 U.S. 388, 395 & n.9 (1987); Japan Whaling Ass'n v. American Cetacean Soc'y, 478 U.S. 221, 230 n.4 (1986); (viewing question of whether plaintiff had basis for judicial review as simply one of whether APA provided one, where substantive statutes did not include provisions for judicial review of agency action); Barlow v. Collins, 397 U.S. 159, 173 (1970) (opinion of Brennan, J.) ("When the legality of administrative action is at issue," and a statute has "preclude[d] judicial review" under the APA, "the plaintiff is out of court.").

Nothing in the terms of the LSC Act suggests that parties such as Regional are part of any "special class to be benefitted by," Cannon v. University of Chicago, 441 U.S. 677, 690 (1979), the Act in general or section 2996f(a)(5) in particular. Indeed, Congress in the LSC Act as a whole specifically identified another group as the Act's special beneficiaries -- that is, "indigents who have legal grievances but who are unable to afford the legal means necessary to redress them." Grassley v. Legal Servs. Corp., 535 F. Supp. 818, 823 (S.D. Iowa 1982) (holding that LSC Act provides no implied cause of action to enforce its bans on lobbying and certain political activities). See 42

_____

Act, and concluding that "[t]he legislative scheme, therefore, is one of Corporation and, ultimately, congressional oversight. The presence of a nonjudicial means of enforcement is indicative of a congressional intent not to create an implied private cause of action.").

Second, Regional appears to contend that it should have a right of action simply because it exhausted Legal Services' complaint procedures before suing in federal court. But the existence of a right of action and of an exhaustion requirement are separate issues, even though complying with the latter, where it exists, is usually a condition for invoking the former. See, e.g., Block v.Community Nutrition Inst., 467 U.S. 340, 346-47 (1984); Volvo GM Heavy Truck Corp. v. Department of Labor, 118 F.3d 205, 209-11 (4th Cir. 1997); Grassley, 535 F. Supp. at 827.

9

U.S.C. § 2996 (congressional findings and declaration of purpose). Further, the intended special beneficiaries, if any, of section 2996f(a)(5)'s limitations upon lobbying are not those against whom Legal Services' recipients might lobby, but rather the recipients' clients, who benefit by having the Legal Services program protected from political pressures. See 42 U.S.C.§ 2996(5) (congressional finding that "to preserve its strength, the legal services program must be kept free from the influence of or use by it of political pressures"). More likely, however, there is no special beneficiary of that section, since it is "no more than a general proscription of certain activities," Grassley, 535 F. Supp. at 822. And "a general proscription of certain activities . . . does not indicate an intent to provide for private rights of action." California v. Sierra Club, 451 U.S. 287, 294 (1981).[7]

Finally, we address what appears to be Regional's primary argument for judicial review in this case. It relies upon three courts of appeals that have concluded that judicial review of certain actions by Legal Services was available and claims that the holdings of those cases should apply here. See Texas Rural Legal Aid, Inc. v. Legal Servs. Corp., 940 F.2d 685 (D.C. Cir. 1991); San Juan Legal Servs., Inc. v. Legal Servs. Corp., 655 F.2d 434 (1st Cir. 1981); Spokane County Legal Servs., Inc. v. Legal Servs. Corp., 614 F.2d 662 (9th Cir. 1980).[8] But because those cases are readily distinguishable, they do not assist Regional, and we take no position on whether they were correctly decided.

The cases upon which Regional relies are distinguishable for two reasons. First, they did not involve alleged violations of section 2996f(a)(5). Second, the provisions of the LSC Act that they did involve implicitly provide, at least arguably (and unlike section

_____

[7] We also note that the legislative history on the existence of a private right of action, to the extent that it provides any guidance, supports our conclusion. Compare Grassley, 535 F. Supp. at 823-24, 826, with Texas Rural Legal Aid, Inc. v. Legal Servs. Corp., 940 F.2d 685, 697 (D.C. Cir. 1991). Where neither the language nor legislative history of a statute suggests any intent to create a private right of action, there is no need to inquire further. Sierra Club, 451 U.S. at 297.

[8] Regional also cites numerous district court opinions, but all from within the circuits that decided Texas Rural and Spokane County.

2996f(a)(5)), for some sort of judicial review when Legal Services acts under them, because they impose on Legal Services some of the same requirements that the APA imposes on agencies subject to it. See Texas Rural, 940 F.2d at 690 (in challenge to regulations promulgated by Legal Services, explaining that "LSC . .. is required [under 42 U.S.C. § 2996g(e)] to engage in notice-and-comment rulemaking . . ., indicating that Congress intended that it be treated for these purposes like an agency of the government") (emphasis added); Wilkinson v. Legal Servs. Corp., 27 F. Supp. 2d 32, 44, 62 (D. D.C. 1998) (stating that Congress in section 2996g(e) "specifically provided," consistent with section 2996d(e)(1), for treating Legal Services as a federal agency, and explaining Texas Rural as holding that "the LSC Act impliedly provides for judicial review when LSC exercises its rulemaking authority vis-a-vis its grantees"); San Juan, 655 F.2d at 439 (noting, in recipient's challenge to funding decision, extensive procedural rights that section 2996j provides to recipients whose funding Legal Services wishes to terminate, and concluding that Congress would not have "specifically provided" such rights "if it did not assume that judicial review would be available to a grantee who claimed that it was denied" those rights); Multnomah Legal Servs. Workers Union v. Legal Servs. Corp., 936 F.2d 1547, 1556 (9th Cir. 1991) (limiting Spokane County to "funding decisions" and emphasizing that "we are not free to read [section 2996d(e)(1)] out of the LSC Act").

Thus, whatever the bases for judicial review may have been in these cases, they were clearly derived from the particular provisions of the LSC Act before those courts.

We therefore hold that because nothing in the LSC Act "specifically provide[s]," 42 U.S.C. § 2996d(e)(1), for treating Legal Services as a federal agency, and thus as subject to the APA's provisions for judicial review, when it addresses a complaint alleging a violation of section 2996f(a)(5), and because nothing in the LSC Act itself provides to the alleged victim of that violation any basis for judicial review, Regional has no cause of action to challenge in federal court Legal Services' decision that its recipients did not unlawfully lobby against Regional. Accordingly, the proper course for the district court was to dismiss Regional's first cause of action without reaching its merits.

11

III.

In addition to its claim of a violation of the LSC Act, Regional also brought a claim that Legal Services violated FOIA, which specifically applies to Legal Services, <u>see</u> 42 U.S.C.§ 2996d(g), when it delayed its release to Regional of requested documents. The district court dismissed the FOIA claim as moot, because Regional has received those documents. We affirm, concluding that Regional's challenge to the particular alleged violation of FOIA from the delayed release of documents is moot for the reason that the district court gave, and that its challenge to Legal Services' alleged policy of not disclosing to third parties documents relating to an ongoing investigation is not ripe for review.

It is undisputed that a challenge to a particular denial of a FOIA request becomes moot if an agency produces the requested documents. <u>See</u>, <u>e.g.</u>, <u>Payne Enter., Inc.</u> v. <u>United States</u>, 837 F.2d 486, 490-91 (D.C. Cir. 1988). Thus, because Legal Services fully complied with Regional's requests in December 1996, when Legal Services completed its investigation, Regional's challenge to the denials of its requests prior to December 1996 is moot.

Regional argues, however, that it is also challenging the policy behind Legal Services' denials, and relies on <u>Payne</u> for the rule that such a suit does not become moot upon release of the requested documents. <u>Payne</u>, 837 F.2d at 491. <u>See City of Houston</u> v. <u>Department of Housing and Urban Dev.</u>, 24 F.3d 1421, 1430 (D.C. Cir. 1994). Although Regional correctly states the rule of <u>Payne</u> (on whose merits we need not pass), a suit under that rule may only proceed if the claim is ripe, <u>City of Houston</u>, 24 F.3d at 1429-30; <u>see Payne</u>, 837 F.2d at 492-94; <u>Webb</u> v. <u>Department of Health and Human Servs.</u>, 696 F.2d 101, 106-07 (D.C. Cir. 1982), and Regional's is not.

The inquiry to determine the ripeness of a claim is twofold, looking to "the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." <u>Abbott Lab.</u> v. <u>Gardner</u>, 387 U.S. 136, 149 (1967). The question of an issue's fitness for judicial decision in turn has two parts -- (1) "the agency's interest in crystallizing its policy before that policy is subject to review"; and (2) "the court's interest in avoiding unnecessary adjudication and in deciding issues in a concrete setting." <u>City of Houston</u>, 24 F.3d at 1430-31 (internal quotation marks omitted). A court must balance

12

these two interests (the agency's and the court's) against the hardship to the plaintiff from withholding court consideration at a given time. See id.

Regional's claim is not ripe, because Legal Services' policy is not necessarily "crystallized"; judicial resolution of the claim would almost certainly amount to unnecessary adjudication; and Regional will suffer little, if any, hardship from delay. First, it is not clear whether Legal Services actually has a fully developed policy of withholding from third parties documents relating to an ongoing investigation. It does have a policy of withholding such documents from the target of the investigation, a policy rooted in FOIA itself. See 5 U.S.C. § 552(b)(7)(A). But according to Legal Services (and Regional does not contest this claim), Regional's request for documents relating to an ongoing investigation was the first such one that Legal Services had received that was not from "a program under review." Although Legal Services did extend the policy to cover Regional's request, it is possible that, upon reconsideration in a future case, Legal Services would alter its position, especially since current Legal Services regulations on FOIA requests do not specifically cover this circumstance, see 45 C.F.R. § 1602.9, and since, as the district court noted, such an extension of the policy may conflict with our decision in Wellford v. Hardin, 444 F.2d 21, 24 (4th Cir. 1971).

Second, because Regional has given us no reason to think that it is likely to have any cause to file another complaint with Legal Services over lobbying by recipients anytime soon, and thus no reason to think that Legal Services' alleged policy will affect it -- or, for that matter, anyone else, given that in the twenty-five years of Legal Services' existence, Regional's FOIA request is apparently the first of its kind -- adjudication of Regional's prospective claim appears unnecessary.

Third, for the same reason, any hardship that Regional may face from delaying adjudication of Legal Services' alleged policy until Regional again suffers from it will be minimal. Legal Services' policy has no "direct and immediate," Abbott Lab., 387 U.S. at 152, effect on Regional that would amount to hardship. Indeed, the policy has no present effect at all, much less a "direct" one, "on the day-to-day business" of Regional (regardless of what effect the lobbying may have had). Id. Regional, unlike plaintiffs in cases where courts have found

13

challenges to an agency's FOIA policies ripe, does not "rely heavily and frequently on FOIA," Better Gov't Ass'n v. Department of State, 780 F.2d 86, 93 (D.C. Cir. 1986). See Payne, 837 F.2d at 494. On the contrary, "[t]he only hardship [Regional] will endure as a result of delaying consideration of this issue is the burden of having to file another suit." Webb, 696 F.2d at 101 (finding unripe a challenge to agency's regulation governing FOIA requests). And whether that burden will ever even exist depends upon multiple contingencies -- it will arise only in the unlikely event that Legal Services' recipients (of which SCLSA is no longer one) again lobby against Regional, again do so successfully or at least in such a way as to cause difficulties for Regional, Regional again seeks to "participate" in the investigation[9] and thus brings a FOIA request, and Legal Services again delays granting the request for the same reason it did here. In light of all of these considerations, we agree with the district court that Regional's FOIA claim, in whatever form, is not justiciable, and we affirm its dismissal.

IV.

Accordingly, there being no basis for judicial review of Legal Services' determination that its recipients did not violate 42 U.S.C. § 2996f(a)(5) in lobbying against Regional, and Regional's FOIA claim not being ripe for review, we vacate the district court's judgment with regard to the former claim and remand with instructions to dismiss that claim, and we affirm the dismissal of the FOIA claim.

VACATED AND REMANDED IN PART; AFFIRMED IN PART
_____

[9] Regional's FOIA request appears actually to be a means of somehow enabling it to participate in Legal Services' internal investigation, apparently as a handmaiden of sorts to Legal Services. Regional's cause of action under FOIA included a request for an order that "in any subsequent proceedings with LSC, Regional be allowed to review all communications between the Recipients and Employees and LSC and to take discovery from the Recipients and Employees, including written interrogatories, requests for production of documents, and depositions." Like Legal Services, we are unaware of any authority in the LSC Act for a right to such "participation" in an investigation of others.

14

MURNAGHAN, Circuit Judge, concurring:

I am in agreement with the result reached in the lead opinion to the extent that it finds the actions of the Legal Services Corporation ("LSC" or "Corporation") unreviewable and Regional Management Corporation's claim under the Freedom of Information Act moot. I disagree, however, with the reasoning advanced in the opinion regarding reviewability and so write separately.

The lead opinion concludes that, because the Corporation is not subject to the Administrative Procedures Act ("APA") and because the Legal Services Corporation Act ("LSC Act") does not provide a private right of action, the Corporation's decision that certain recipients of the Corporation's funds did not unlawfully lobby the South Carolina General Assembly and the Georgia Commissioner of Insurance is not subject to judicial review. To the contrary, there exists a presumption of reviewability that can be overcome only if Congress' intent to preclude such review is "fairly discernible in the statutory scheme." Block v. Community Nutrition Institute, 467 U.S. 340, 350-51 (1984). There is no such congressional intent evident in the case at bar. The case does involve, however, the Corporation's exercise of its discretion not to bring an enforcement action, which is beyond the power of judicial review. On that basis, the district court's decision should be vacated.

There are generally three mechanisms through which a litigant can challenge the legality of a federal agency's action: (1) the agency can be governed by the APA; (2) a particular regulatory scheme can contain an explicit provision for obtaining judicial review of agency actions under that scheme; or (3) the statute the litigant claims to be violated can provide a litigant with a private right of action to enforce the act. See Hoefler v. Babbitt, 139 F.3d 726, 728 (9th Cir.), cert. denied, 119 S.Ct. 70 (1998). Since the Corporation is not "a department, agency, or instrumentality, of the Federal Government," 42 U.S.C.A. § 2996d(e)(1), its decisions are not reviewable under the APA. See Spokane County Legal Services, Inc. v. Legal Services Corp., 614 F.2d 662, 669 (9th Cir. 1980); Texas Rural Legal Aid, Inc. v. Legal Services Corp., 940 F.2d 685, 690, 696 (D.C. Cir. 1991). Furthermore, the LSC Act does not contain any provision for judicial review of the Corporation's decision, nor any provision that affords

15

Regional Management Corporation ("Regional") a private right of action. The Corporation, therefore, concludes (as does the lead opinion) that Congress did not intend the Corporation's actions to be generally subject to judicial review.**1**

Contrary to the Corporation's conclusion, however, "[s]tatutory silence ... does not indicate a legislative intent to preclude judicial review." San Juan Legal Services, Inc. v. Legal Services Corp., 655 F.2d 434, 438 (1st Cir. 1981) (relying on Stark v. Wickard, 321 U.S. 288, 309-10 (1944)). As the First Circuit explained in San Juan Legal Services, "[t]here is no presumption against judicial review and in favor of administrative absolutism unless that purpose is fairly discernible in the statutory scheme. And the preclusion of judicial review `is not lightly to be inferred.'"**2** 655 F.2d at 438 (finding nothing in the LSC Act or its legislative history suggesting that judicial review of a defunding hearing is precluded) (internal citations omitted); see also Texas Rural Legal Aid, 940 F.2d at 697 (finding "nothing in the Act or the legislative history to suggest that [Congress] meant to insulate LSC's actions from judicial review"). Indeed, absent "clear and

_____

**1** As support for its conclusion, the Corporation points to the legislative history of the Act. When the LSC Act was amended in 1977, the House Report stated that the amendments to the Act would reaffirm the "exclusive authority" of the Corporation to insure compliance with the Act. H. Rep. No. 95-310, 95th Cong., 1st Sess. 6 (1977), reprinted in 1977 U.S.C.C.A.N. 4503, 4504. The House Report further noted that the Act "assures that the Corporation is accountable directly and only to the Congress. That accountability mechanism has worked well and must be preserved." Id. at 4508. These quotations from the House Report, however, do not refer to judicial reviewability. As the paragraphs preceding the latter quotation make clear, and as the District of Columbia Circuit noted in Texas Rural Legal Aid, 940 F.2d 685, the "statement ... refers only to Congress's concern to `protect the Corporation from inappropriate control by the Executive Branch' .... It simply does not address the issue of judicial review of LSC action." 940 F.2d at 697 (internal citations omitted).

**2** The First Circuit in San Juan Legal Services recognized that most of the cases on which it relied "involved government agencies and were decided in the shadow of the Administrative Procedure Act." 655 F.2d at 438 n.6. The court concluded, however, that the principles were just as applicable to the situation at issue. Id.

16

convincing evidence"[3] of a contrary congressional intent, there is a "presumption in favor of judicial review" of administrative action.[4] Armstrong v. Bush, 924 F.2d 282, 291 (D.C. Cir. 1991) (relying on Abbott Laboratories v. Gardner, 387 U.S. 136, 141 (1967)); see also Electricities of North Carolina, Inc. v. Southeastern Power Administration, 774 F.2d 1262, 1266 (4th Cir. 1985) ("Agency actions are presumptively subject to judicial review except where Congress manifests its intent to preclude such review.") (relying on Abbott Laboratories, 387 U.S. at 140-41); Duncan v. West, 153 F.3d 719, 1998 WL 387191 (4th Cir. June 24, 1998) (unpublished) (recognizing strong presumption that Congress intends judicial review of administrative action), cert. denied, 119 S.Ct. 411 (1998). "[W]here substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling."[5] Block, 467 U.S. at 351.

The case before us does involve, however, the Corporation's exercise of its discretion not to bring an enforcement action.[6] As such, it

_____

[3] The Supreme Court in Block v. Community Nutrition Institute, 467 U.S. 340 (1984), noted that the "clear and convincing evidence" standard is not intended in the strict evidentiary sense. Rather, "the Court has found the standard met, and the presumption favoring judicial review overcome, whenever the congressional intent to preclude judicial review is `fairly discernible in the statutory scheme.'" 467 U.S. at 350-51.

[4] The presumption of reviewability does not apply to an agency's discretionary refusal to initiate enforcement proceedings. See Heckler v. Chaney, 470 U.S. 821, 837-38 (1985).

[5] The presumption of reviewability "may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent." Block, 467 U.S. at 349; see also Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 670-73 (1986) (noting that presumption can be defeated by "`specific language or specific legislative history that is a reliable indicator of congressional intent,' or a specific congressional intent to preclude judicial review that is `fairly discernible' in the detail of the legislative scheme"). As stated above, no such language exists in the text of the statute, and there exists no reliable legislative history evidencing an intent by Congress to preclude judicial review.

[6] Regional maintains that the Corporation did not merely exercise its prosecutorial discretion but made an adjudicative decision, including

17

is a matter exclusively within the Corporation's discretion and beyond the power of judicial review. Congress gave the Corporation the sole authority "to insure the compliance of recipients and their employees with the provisions of the [Act] and the rules, regulations, and guidelines promulgated pursuant to [the Act] ...." 42 U.S.C.A. § 2996e(b)(1)(A). The available methods of enforcing the Act include the possible suspension of funding and/or suspension of the employees found to have violated the Act and, after proper notice and hearing, the termination of funding or the termination of the employees found to have violated the Act, "as deemed appropriate for the violation in question." 42 U.S.C.A. § 2996e(b)(5). By their terms, the statutory enforcement provisions permit, but do not compel, the Corporation to sanction violations of the Act or of the Corporation's regulations. See 42 U.S.C.A. § 2996e(b)(5); see also 45 C.F.R. § 1618.5(a) (requiring Corporation to investigate allegations of noncompliance "promptly and attempt to resolve [them] through informal consultation with the recipient"); 45 C.F.R.§ 1618.5(b) (giving Corporation discretion to suspend or terminate funding after "attempts at informal resolution have been unsuccessful"). Congress has committed the enforcement power to the Corporation's discretion, and it is therefore not within the court's power to review. **7** Chaney, 470 U.S.

_____

findings of fact and conclusions of law. I do not believe that the Corporation "adjudicated" the allegations at issue. Instead, it conducted a preliminary investigation to determine if the facts alleged in the complaint warranted initiation of an adjudicative process, i.e., the defunding process. The Corporation did not hold a hearing or employ any of the procedures set forth in 45 C.F.R. Parts 1606 and 1625 for defunding proceedings because it made a decision, after the preliminary investigation, that no violation of the Act had occurred. Courts must defer to the agency's decision when the agency has conducted a preliminary "pre-adjudicatory" investigation and has decided to take no further action. See generally Sierra Club v. Larson, 882 F.2d 128 (4th Cir. 1989) ("The judiciary is ill-equipped to oversee executive enforcement decisions, whereas the agency is equipped to decide where to focus scarce resources, how to handle delicate federal-state relations and how to evaluate the strengths and weaknesses of particular cases.").

**7** The presumption of unreviewability can be overcome by a showing that the statute in question provides "guidelines for the agency to follow in exercising its enforcement powers." Chaney, 470 U.S. at 833. Also, courts can "`review allegations that an agency exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations' but they `may not review agency action where the challenge is only to the decision itself.'" Electricities of North Carolina, 774 F.2d at 1267.

18

at 831 ("[A]n agency's decision not to prosecute or enforce ... is a decision generally committed to an agency's absolute discretion.").

I, therefore, concur in the result reached in the lead opinion but believe judicial review is improper in the case at bar because the Corporation is within its prosecutorial discretion. I submit that the district court's decision should be vacated on that basis.

19